# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2020

Lyle W. Cayce
Clerk

No. 19-20544

THE UNIFIED BUDDHIST CHURCH OF VIETNAM, *also known as* GIAO HOI PHAT GIAO VIET NAM THONG NHAT,

*Plaintiff—Appellant*,

*versus*

UNIFIED BUDDHIST CHURCH OF VIETNAM - GIAO HOI PHAT GIAO VIET NAM THONG NHAT, *doing business as* VAN PHONG II VIEN HOA DAO; DANG PHAM, *also known as* THICH GIAC DANG; STEVEN DIEU; QUE PHUONG BUI; PHUONG QUE BUI, INCORPORATED,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-1433

Before OWEN, *Chief Judge*, and DENNIS and HAYNES, *Circuit Judges*.

PER CURIAM:*

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 19-20544

We address the trademark violation and accounting allegations brought by a church that calls itself the Unified Buddhist Church of Vietnam (the "Unified Church") against a Texas nonprofit with disputed connections to that church, an entity that calls itself Unified Buddhist Church of Vietnam – Giao Hoi Phat Giao Viet Nam Thong Nhat ("UBCV Texas"). The subjects of their dispute are (1) UBCV Texas's use of marks also used by the Unified Church and (2) a California property that UBCV Texas purchased for a temple, allegedly with the Unified Church's assistance, and later sold, allegedly without the Unified Church's consent.

The Unified Church sued UBCV Texas, Thich Giac Dang, and Steven Dieu (collectively, "Defendants")[1] in federal district court, asserting various trademark claims and requesting an accounting relating to the California property. The district court granted summary judgment in Defendants' favor, concluding that the Unified Church's asserted marks had not acquired a secondary meaning and that an accounting was inappropriate in this case. We AFFIRM.

## I.    Background

The Unified Church states that it is an unincorporated organization founded in Vietnam in 1964 that has attracted members and generated branches worldwide. It is also known as UBCV and Giao Hoi Phat Giao Viet Nam Thong Nhat. UBCV Texas is a Texas Buddhist church that was founded in 1992 and registered in 2014 as a nonprofit Texas corporation. Dang organized UBCV Texas, and Dieu is its attorney and registered agent.

---

[1] The Unified Church did not bring any trademark claims against Defendants Que Phuong Bui or Phuong Que Bui, Incorporated, and does not challenge the district court's dismissal of its claims against those defendants.

The precise relationship between the Unified Church and UBCV Texas is disputed. The Unified Church claims that it founded UBCV Texas and appointed its directors, including Dang as president. The Unified Church further alleges that it helped UBCV Texas purchase real property in California, which UBCV Texas subsequently sold without the Unified Church's authorization. UBCV Texas disputes these allegations and asserts that it is not legally connected to the Unified Church in any way.

In 2017, the Unified Church brought suit against Defendants, alleging, as relevant here, a variety of state and federal trademark claims: false designation of origin, unfair competition, trademark infringement, dilution, and unjust enrichment. In particular, the Unified Church claimed that UBCV Texas used three asserted marks belonging to the Unified Church:

1. "UBCV";
2. "Unified Buddhist Church of Vietnam"; and
3. "Unified Buddhist Church of Vietnam - Giao Hoi Phat Giao Vietnam Thong Nhat d/b/a Van Phong II Vien Hoa Dao" (with and without the additional designation "Texas")

The Unified Church also sought an accounting in connection with UBCV Texas's purchase and sale of the California property. The district granted summary judgment in favor of Defendants on the Unified Church's trademark claims and denied the Unified Church's request for an accounting. The Unified Church timely appealed.

## II.    Jurisdiction & Standard of Review

Because this case involves federal trademark claims under the Lanham Act, the district court had original jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338 and supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a). We have jurisdiction under 28 U.S.C. § 1291 to review the district court's final judgment.

We review a district court's grant of summary judgment de novo. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 233 (5th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Although whether a mark has developed a secondary meaning is usually a question of fact, summary judgment is appropriate if the record fails to raise a fact question, thus compelling the conclusion that the moving party is entitled to judgment as a matter of law. *See Amazing Spaces*, 608 F.3d at 234. In making that determination, we must construe all the evidence in the light most favorable to the nonmoving party. *See id.*

### III.    Discussion

At issue on appeal are (1) a set of trademark claims that turn on whether the Unified Church's asserted marks have acquired secondary meaning and (2) a request for an accounting. We affirm the district court's grant of summary judgment in favor of Defendants on both issues.[2]

### A.    Trademark Claims

Under the Lanham Act, an entity can pursue certain claims in protection of a "trademark"[3]—"any word, name, symbol, or device" that a

---

[2] UBCV Texas also contends that we should affirm because the Unified Church did not raise the seven-factor test for secondary meaning before the district court and because the Unified Church did not present summary judgment evidence in a form that would be admissible at trial. As we conclude that summary judgment was appropriate under the seven-factor secondary meaning test even considering the Unified Church's submitted materials, we do not address UBCV Texas's other arguments.

[3] Although the Unified Church's asserted marks might be more accurately described as "service marks," "the legal requirements for both trademarks and service marks are essentially the same." J. THOMAS MCCARTHY, 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 3.1 (5th ed. 2017 & Supp. 2020); *see also* 15 U.S.C. § 1127 (defining a "service mark" as a mark used "to identify and distinguish the services of one person . . . from the services of others").

person uses or intends to use "to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods," 15 U.S.C. § 1127—so long as the mark "may be distinguished from the goods of others," 15 U.S.C. § 1052. The Unified Church raised three claims under Section 43 of the Lanham Act: false designation of origin, 15 U.S.C. § 1125(a); unfair competition, *id.*; and dilution, *id.* § 1125(c). It also raised equivalent Texas state-law claims, which involve the same threshold issues as the federal claims and do not require separate discussion. *See Amazing Spaces*, 608 F.3d at 235 n.7.

At trial, to sustain all of its trademark claims, the Unified Church would have to prove that its asserted marks are legally protectable, so we must assess whether it has raised a disputed issue of material fact on this point. *Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 185 (5th Cir. 2018). As described above, the Unified Church's claims against Defendants rely on three asserted marks: "UBCV"; "Unified Buddhist Church of Vietnam"; and "Unified Buddhist Church of Vietnam - Giao Hoi Phat Giao Vietnam Thong Nhat d/b/a Van Phong II Vien Hoa Dao" (with and without the additional designation "Texas"). The Unified Church has not received a certificate of registration for these marks from the United States Patent and Trademark Office.

Although registration affords marks a presumption of validity, *see* 15 U.S.C. §§ 1057(b), 1115(a), unregistered marks of the sort at issue here can nonetheless be protectable if their holder can demonstrate both ownership and distinctiveness, *see Viacom*, 891 F.3d at 186–87. Defendants do not specifically challenge the Unified Church's ownership of the asserted marks, and we assume without deciding that the Unified Church's apparent distribution of documents containing its marks is sufficient to survive summary judgment on that requirement. *See id.* at 186 (noting that an

ownership right "is established by use" and "accrues when goods bearing the mark are placed on the market" (quotations omitted)).

Even assuming ownership, however, the Unified Church has failed to raise a fact issue on distinctiveness. "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). The Unified Church does not argue that the marks are inherently distinctive, and so we need only evaluate whether they have acquired secondary meaning. That question is resolved with reference to seven factors:

> (1) the length and manner of use of the mark,
>
> (2) the volume of sales,
>
> (3) the amount and manner of advertising,
>
> (4) the nature of use of the mark in newspapers and magazines,
>
> (5) consumer-survey evidence,
>
> (6) direct consumer testimony, and
>
> (7) the defendant's intent in copying the mark.

*See Viacom*, 891 F.3d at 190. Although no factor is dispositive, *see id.*, the fifth—consumer survey evidence—is perhaps the most important: we have "consistently expressed a preference for an objective survey of the public's perception of the mark at issue," *Amazing Spaces*, 608 F.3d at 248 (quotation omitted). We address each factor in turn.

As the district court correctly determined, only the first factor—the length and manner of use of the Unified Church's asserted marks—has evidence weighing in favor of the marks having developed protectable

secondary meaning.  The Unified Church has presented evidence that, for over thirty years, it used the phrases "UBCV," "Unified Buddhist Church of Vietnam," and "Giao Hoi Phat Vietnam Thong Nhat."[4]  That length of use weighs in favor of the conclusion that the marks may have developed a secondary meaning.

The Unified Church cites no evidence on the second factor, volume of sales—only unsupported allegations from its complaint regarding its fundraising activities.  Thus, it has failed to raise a fact question on this factor and the factor therefore weighs against finding secondary meaning.

Similarly, the Unified Church cites no evidence of advertising, the third factor.  To be sure, the Unified Church did submit a brochure published in conjunction with the International Buddhist Information Bureau for a "Commemoration Ceremony," but it presented no clear evidence as to whom that document was distributed.  The Unified Church also attached to its complaint a document apparently published in the *Saigon Times* that may advertise an event, but the Unified Church has not explained its significance and we cannot discern its purpose from the face of the document—indeed, it is in Vietnamese and there is no English translation in the record.  *See generally United States v. Valdivia*, 680 F.3d 33, 45 (1st Cir. 2012) (holding that foreign-language documents presented to federal courts must typically be translated to English in order to be considered by the court).  Additionally, the Unified Church provided miscellaneous badges, pins, and similar materials, but did not present evidence demonstrating their significance.  Without evidence demonstrating that the Unified Church used any of these materials to actually advertise itself, we conclude that the Unified Church

---

[4] This last phrase is sometimes stylized as "Giao Hoi Phat Viet Nam Thong Nhat."

has failed to raise a fact issue (or prove anything) supporting this factor, and so this factor weighs against finding secondary meaning.

Nor does the Unified Church present sufficient summary judgment evidence regarding the use of its asserted marks in newspapers and magazines, the fourth factor. The Unified Church submitted three news articles discussing the 2008 death of its former leader Thich Huyen Quang. Those articles describe Quang's association with the "Unified Buddhist Church of Vietnam," and two of the articles use the acronym "UBCV" as shorthand for the church. The Unified Church also points to "the numerous public letters from world leaders and official recognition by prominent government bodies," many of which use one or more of the asserted marks. These articles and letters, however, are each over ten years old and contain little information about the public's perception (rather than the journalists' or political leaders' perceptions) of the asserted marks. Consequently, the Unified Church has failed to raise a fact issue on this factor, and it weighs against finding secondary meaning.

The Unified Church presents no evidence on the fifth factor, consumer survey evidence—"the most direct and persuasive way of establishing secondary meaning." *Amazing Spaces*, 608 F.3d at 248. Although the Unified Church is correct that evidence of this kind is "not required," *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 546 (5th Cir. 2015), "in a borderline case where it is not at all obvious that a designation has been used as a mark, survey evidence may be necessary to prove trademark perception," *Amazing Spaces*, 608 F.3d at 249 (brackets and quotation omitted). The Unified Church submitted no consumer surveys of any kind, and so this factor weighs against finding secondary meaning.

The same is true with the sixth factor, direct consumer testimony regarding the asserted marks. Because the Unified Church presents no evidence on this factor, it weighs against finding secondary meaning.

Finally, the Unified Church cites no evidence that Defendants intended to copy its marks. The Unified Church argues that the "main crux" of its complaint is that "Dang stole [t]he Unified Church's local branch" and then "used its name and storied history" to raise donations. The Unified Church does not, however, support those arguments with any record evidence. Rather, the Unified Church relies solely on unsupported allegations from its complaint concerning Dang's alleged intent to make off with UBCV Texas and appropriate the proceeds from the California property. Without evidence supporting those allegations, this factor weighs against finding secondary meaning.

We are therefore left with only one factor weighing in favor of secondary meaning (continued use). The Unified Church's allegedly lengthy use of these marks would not be enough, however, for a reasonable jury to find in its favor regarding secondary meaning given the lack of sufficient evidence supporting any other factors. *See Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 119 & n.22 (5th Cir. 1979) (noting that "courts have summarily rejected claims of secondary meaning predicated solely upon continued use of the mark for many years" (quotation omitted)).

To sum up, there is insufficient summary judgment evidence to support a finding at trial that the terms "UBCV," "Unified Buddhist Church of Vietnam," or "Unified Buddhist Church of Vietnam - Giao Hoi Phat Giao Vietnam Thong Nhat d/b/a Van Phong II Vien Hoa Dao" have developed a secondary meaning such that the public thinks only of the Unified Church when it sees them. Because a reasonable jury could not, on this record, conclude that the asserted marks developed a secondary meaning, the district

court correctly granted summary judgment in favor of UBCV Texas on the Unified Church's trademark claims.

### B.     Accounting Claim

The Unified Church also seeks an equitable accounting in connection with Defendants' purchase of the California property.  Whether as a remedy or as a standalone claim, a party seeking an accounting must demonstrate that the facts and accounts are "so complex that adequate relief may not be obtained at law." *See Hutchings v. Chevron USA, Inc.*, 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993, writ denied).  Thus, an equitable accounting is not available, for example, when the proponent has not explained why standard discovery procedures would be inadequate to provide it with information necessary to obtain adequate relief. *Id.*

The Unified Church has not explained—below or on appeal—why normal discovery procedures or other relief at law would be inadequate. *See id.* at 762.  Accordingly, the district court properly granted summary judgment in favor of Defendants on the Unified Church's request for an accounting.

### IV.     Conclusion

The district court's grant of summary judgment in favor of Defendants is AFFIRMED.